# IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN

DONALD AND BELYNDA GAMBRELL,

                            Plaintiff,

v.

G4S SECURE SOLUTIONS (USA) INC., RENAISSANCE CENTER MANAGEMENT COMPANY, AND GENERAL MOTORS, LLC. f/k/a GENERAL MOTORS COMPANY

                  Jointly and severally,

                  Defendants.

Case No:

HON.

---

DANIELLE B. SAFRAN (P61965)
THE SIGLER LAW FIRM, PLC.
30300 Northwestern Hwy., Suite 337
Farmington Hills, MI 48334
(248) 705-6400
safranlaw1@gmail.com
*Attorney for Plaintiffs*

---

## PLAINTIFFS' COMPLAINT AND JURY DEMAND

There is no other pending or resolved civil action
arising out of the transaction or occurrence
alleged in the complaint.

NOW COME Plaintiffs, Donald and Belynda Gambrell, by and through their

attorneys, The Sigler Law Firm, PLC., and submits Plaintiffs' Complaint as follows:

## JURISDICTION AND VENUE

1.     Plaintiffs, Donald and Belynda Gambrell, are residents of Wixom, a city located in Oakland County, Michigan.

2.     Defendant, G4S SECURE SOLUTIONS (USA) INC., ("G4S") is a foreign corporation registered in the state of Michigan that conducts a regular and systematic portion of its business in Wayne County, State of Michigan; the Defendant has its principal place of business in the state of Florida.

3.     Defendant, RENAISSANCE CENTER MANAGEMENT COMPANY, ("RCM") is a domestic profit corporation registered in the State of Michigan that conducts a regular and systematic portion of its business in Wayne County, Michigan.

4.     Defendant, GENERAL MOTORS, LLC., ("GM") is a foreign corporation registered in the State of Delaware that conducts a regular and systematic portion of its business in Wayne County, Michigan.

5.     Plaintiff Donald Gambrell was employed by Defendants as a Security Officer at their Renaissance Center location for all relevant time periods herein, which is located in the City of Detroit, County of Wayne, State of Michigan.

6.     Plaintiffs Donald and Belynda Gambrell have been married for all relevant time periods.

7.     The citizenship of the parties in this matter are diverse.

2

8.     The amount in controversy exceeds $75,000, exclusive of costs, interest, and attorney fees.

9.     This Court has diversity jurisdiction over this matter pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1332; this Court has supplemental jurisdiction for claims brought under state law.

10.     Venue is proper in this Judicial District pursuant to 28 U.S.C. §1391 (b)(2). Defendant is licensed in, has transacted business in, and employed Plaintiff in this district; the events that give rise to these claims occurred in this Judicial District.

## GENERAL ALLEGATIONS

11.     Plaintiff Donald Gambrell, an African American male was hired by Defendants in the position of GM/Ren Cen Officer on approximately March 20, 2017 and remains employed to date.

12.     Plaintiff Donald Gambrell filed a Charge of Discrimination with the Michigan Department of Civil Rights ("MDCR") and Equal Employment Opportunity Commission ("EEOC"), Charge Number 471-2018-03932, alleging race discrimination and retaliation against Defendants on August 2018, contending that his joint employers discriminated against him based on his race, in violation of Title VII of the Civil Rights Act of 1964 as amended by the Civil Rights Act of 1991 and all relevant sections of the Act.

13.    Plaintiff Donald Gambrell also filed a Charge of Discrimination with the MDCR and EEOC, Charge Number 471-2020-04043, in March 2021 alleging a continuing violation of race discrimination, disability discrimination and retaliation against Defendants, in violation of Title VII of the Civil Rights Act of 1964 as amended by the Civil Rights Act of 1991 and all relevant sections of the Act and the Americans with Disabilities Act ("ADA") as amended.

14.    The EEOC issued a Notice of Right to Sue in relation to Plaintiff Donald Gambrell's charges of a continuing violation of race and disability discrimination and retaliation, Charge Number 471-2020-04043, on May 12, 2021.

15.    Plaintiff Donald Gambrell filed another Charge of Discrimination with the MDCR and EEOC, Charge Number 471-2020-04100, in March 2021 alleging a continuing violation of race discrimination, disability discrimination and retaliation against Defendants, Plaintiff's joint employers, in violation of Title VII of the Civil Rights Act of 1964 as amended by the Civil Rights Act of 1991 and all relevant sections of the Act and Americans with Disabilities Act ("ADA") as amended.

16.    The EEOC issued a Notice of Right to Sue in relation to Plaintiff Donald Gambrell's charges of a continuing violation of race and disability discrimination and retaliation, Charge Number 471-2020-04100, on May 11, 2021.

17.    Plaintiffs filed this Complaint and Jury Demand within ninety days of his receipt of the EEOC's Right to Sue Letters.

## COUNT I
## RACE DISCRIMINATION

**IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 AND THE ELLIOTT LARSEN CIVIL RIGHTS ACT**

18.     Plaintiffs incorporate the preceding paragraphs by reference as if the same were set forth in their entirety.

19.     The conduct of the Defendants, by and through their management and supervisory personnel, has discriminated against the Plaintiff Donald Gambrell based on race in violation of the Michigan Elliott Larsen Civil Rights Act MCLA §37.2101 et. seq.; Title VII of the Civil Rights Act of 1964 as amended by the Civil Rights Act of 1991 and all relevant sections of the Act.

20.     The Defendants' discrimination of Plaintiff Donald Gambrell based on race has substantially interfered with the Plaintiff's employment in the following manner:

a. Allowing a work environment to exist which is permeated with racial bias in violation of all state and local laws applicable to Equal Employment Opportunity;

b. Failing to comply with Defendant's own policies and procedures and/or to enforce such policies only in favor of non-minority employees;

c. Refusing to provide the Plaintiff with a safe working environment free of race discrimination and/or threats of violence;

d. Failing to discipline supervisors or management personnel who violate the policies outlined in the employee handbook;

e. Allowing managements' discriminatory animus to prevail in Defendants' workplace;

f.   Failing to investigate Plaintiff's complaints of race discrimination, harassment, threats of violence and/or race hostile work environment and instead blaming the Plaintiff;

g.   Failing to discipline the unethical behavior of co-workers, supervision and upper-level management and/or violations of company policy; and

h.   Failing to promote minority employees while non-minority employees, with less seniority and experience than their minority comparables, are provided with advancement opportunities and receive(d) promotions, bonuses and raises;

i.   Knowingly hiring and retaining employees and management who have been previously terminated for acts of race discrimination and creation of a race hostile environment;

j.   Refusing to investigation and/or take disciplinary action against employees who violate Defendant's zero tolerance anti-discrimination and anti-retaliation policies and instead promoting violators of the company's policies;

k.   Failing to enforce its policies and/or follow procedures for Caucasian employees while strictly enforcing its policies against African American employees.

21.   At all material times herein, Plaintiff Donald Gambrell was an employee and Defendants were jointly his employer, covered by and within the meaning of Michigan Elliott-Larsen Civil Rights Act, MCL §37.2101 et seq. and Title VII.

22.   Defendants regularly engages in commerce and its employees handle and use goods, which have moved in interstate commerce.

23.   Defendant, through its agents, representatives, and employees, treated Plaintiff Donald Gambrell differently from similarly situated Caucasian

and/or non-minority employees in the terms and conditions of employment, based on unlawful consideration of his race.

24.     Defendants, through its agents, representatives, directors, management, supervisors, and employees, were predisposed to discriminate against Plaintiff Donald Gambrell on the basis of race and acted in accordance with that predisposition.

25.     Defendants have a pattern and practice of discriminating against their employees on the basis of race.

26.     That Plaintiff and his African American co-workers were paid less than their non-minority counterparts that preformed substantially similar work for Defendants based on race in violation of MCR §37.2211 Section 211.

27.     That Defendants' policies and procedures are enforced in a manner that has a disproportionate effect and/or disparate impact on African American employees.

28.     Defendants disproportionately terminate African American employees for minor infractions and/or for violations of company policy without adequate support/evidence of such violation while Caucasian employees that violate the same policies do not receive disciplinary action.

29.   Defendants' minority employees' requests for medical or stress leave and/or requests for accommodation of a disability/disorder or medical condition are highly scrutinized by Defendants; despite being supported by their medical providers in writing substantiating the medical necessity for such requests.

30.   Medical leave requests from minority employees are often denied by Defendants and/or approved but are accompanied by a lay-off notice dated the same day the leave was to begin.

31.   Meanwhile, Defendants routinely granted Caucasian employees requests for medical leave and/or requests for accommodations of a disability/disorder or medical condition; despite the lack of any documentation or substantiation from medical providers detailing the medical necessity for such requests.

32.   During his employment, Defendants' employees continually and constantly made and continue to make demeaning and racially derogatory remarks, "jokes" and comments to Plaintiff in the workplace which are offensive, based on Plaintiff's race, including being called a "bitch," "bitch ass nigger," "black jackal," "rusty," referring to the color of Plaintiff's skin, and "nigger," from approximately October 2017 through present.

33.    That throughout his employment, Plaintiff Donald Gambrell reported demeaning and racially discriminatory, harassing and offensive comments, jokes and threats to Defendants' management, union representatives, and Human Resources personnel from October 2017 through July 2021; yet management failed to respond, investigate, and/or address any such complaints.

34.    That Defendants' management did not interview Plaintiff or other witnesses named in his reports of race discrimination; nor did Defendants contact Plaintiff relative to any findings of an investigation and/or action taken in response to any of his complaints of discrimination, harassment, hostile work environment and/or retaliation in their workplace.

35.    That several of Defendants' African American employees, including but not limited to Plaintiffs, filed written and oral complaints of race discrimination in the Defendants' workplace to management and Human Resources personnel without any recourse or response.

36.    That several of Defendants' African American employees, including but not limited to Plaintiffs, filed EEOC charges of discrimination based on race against Defendants; Defendants failed to take any action in response to such charges other than a blanket denial without investigation.

37.    Members of Defendants' supervisory team bad mouthed and demeaned Plaintiff to his wife, Belynda Gambrell, on one or more occasions when she picked up her husband after work, on the basis of race.

38.    That Defendants Caucasian employees are treated more favorably than its African American employees as it relates to all aspect of the day-to-day operations, terms and conditions of employment and unequal wages and promotional opportunities.

39.    That Defendants have a pattern and practice of discriminating against African American employees and/or favoring non-minorities in the terms and conditions of their employment.

40.    On several occasions from 2017 to present, Defendants, by and through their management, supervisory and union personnel, has permitted their Caucasian employees to violate use of force protocols as it relates to African American individuals without any repercussion; despite reports that such violations resulted in physical assault, battery and harm to people without sufficient cause.

41.    That Defendants by and through their management, supervisory and union personnel, permit their Caucasian employees to fraudulently falsify police and incident reports in order to conceal violations of use of force protocols as it relates to African American individuals without repercussion; despite the knowledge that such falsification resulted in African American civilians being wrongfully arrested for

crimes that were not committed.

42.    That Defendants by and through their management, supervisory and union personnel, collude, aid and reward Caucasian employees for filing falsified and fraudulent reports intended to conceal discriminatory animus in their workplace and retaliates against any employee that reports such wrongful actions and/or insists such be investigated or corrected.

43.    During Plaintiff's employment, Defendants did not terminate or otherwise discipline any Caucasian employees for egregiously falsifying police and/or incident reports in their workplace; despite being proven that several such violations occurred.

44.    That, following Plaintiff's complaints, which identified specific Caucasian Security Officers responsible for making demeaning, racially motivated threats in Defendants' workplace, Defendants' management ignored such complaints and promoted the offenders instead of taking disciplinary action against them for their offenses.

45.    Defendants' management has a pattern and practice of terminating African American employees from their employment without rationale and/or based on violations of policy that are violated routinely by non-minorities without recourse.

*46.*     Defendants proffered reasons for their treatment of African American employees and employment actions taken against such minorities are merely a pretext for discrimination.

*47.*     That Defendants employed Caucasian Security Officers knowing they had previously been terminated from other employment due to allegations that they used of excessive force against African American civilians and/or committed acts of racial hatred, abuse of power and/or discriminatory conduct aimed towards African American co-workers and civilian individuals based on their race.

*48.*     That Defendants' management intentionally discriminated, permitted others to discriminate, and condoned race discrimination in their workplace and allowed and continues to allow such to permeate the work environment.

*49.*     That Defendants refuse to investigation claims of discrimination based on race in their workplace.

*50.*     Defendant General Motors' management was specifically notified regarding several instances of race discrimination on its premises after RCM and G4S failed to take any remedial action to end the discrimination; General Motors responded by banning the complaining employees from its property; thus, terminating the employment of employees who filed complaints of race discrimination in its workplace in retaliation.

51.     That from 2018 to present Defendants have promoted several Caucasian employees following employees' complaints accusing such individuals of race discrimination, including but not limited to making racial epithets and comments, using undue force and/or threats of violence against African Americans based on their race.

52.     Defendants' workplace culture rewards employees who violate its EEO, anti-discrimination and anti-retaliation policies.

53.     Historically in the United States horrific acts of violence were committed against the African Americans during the times of slavery. One such horror was referred to as "buck breaking;" which was when the strongest African American male in a given community was forced to bend over and touch his toes while Caucasian slave owners raped and/or sexually violated him in attempt to show their power and superiority and instill fear throughout the slave community.

54.     In October 2020 and continuing to date, two of Plaintiff's Caucasian co-workers that were familiar with "buck breaking" repeatedly cornered Plaintiff while at work and told him to "touch his toes" and preform lewd and degrading acts, alluding to the historical atrocities committed against African Americans in order to discriminate, harass, intimidate, provoke and instill fear in Plaintiff Donald Gambrell.

55. Plaintiff Donald Gambrell immediately reported this harassing, discriminatory and race hostile conduct; which constituted a violation of Defendants' company policy and which elicited fear in Plaintiff, to Defendants' management; however, no action was taken by Defendant to investigate or address his complaints.

56. That Plaintiff brought complaints of race discrimination and harassment to Defendant G4S via their complaint hotline without response.

57. That Plaintiff sent several emails to Defendants' management detailing racially hostile, harassing and discriminatory conduct by their employees; however, Defendants failed to adequately respond.

58. That Plaintiff Donald Gambrell reported complaints of race discrimination, violations of company policy and other inappropriate behavior experienced during his employment to Defendants' management personnel on a regular basis throughout his employment; however, no action was taken in response to these complaints.

59. Defendants' employees, including management level employees and union officials, colluded regarding ways in which they could "get rid of the niggers."

60. On several occasions during Plaintiff's employment, Defendants' management was made aware of their security officers' acts of brutality, excessive use of force, racial profiling, false arrests and other abuses of power against African

American civilians as well as falsification of police reports intended to conceal such acts; yet Defendants took no action to end such conduct in their workplace.

61.  Defendants, by and through their management personnel, conceal, destroy and falsify documents, reports and records in attempt to conceal the racially discriminatory acts of their employees.

62.  Defendants, by and through their management personnel, collude as to ways they can retaliate against employees who complain of race discrimination in their workplace and routinely put such plans into action.

63.  Defendants only promote minority employees who demonstrate a willingness to overlook the racial disparity, disparate treatment, racism, race discrimination, hostile work environment, undue force against African American civilians and resulting false police reports by non-minority security officers, and complaints of such by co-workers in Defendants' workplace in furtherance of management's discriminatory animus, intent and/or concealment thereof.

64.  That during his employment Plaintiff Donald Gambrell and other African American co-workers filed several RCM incident reports detailing racially hostile, harassing and discriminatory conduct by its employees to Defendants' management without response.

65.    That on July 7, 2021, Plaintiff Donald Gambrell provided a letter to Defendants' management inquiring as to the status of his prior reports of race discrimination and harassment and requesting assurance that he would be safe in his workplace; Defendants failed to respond to date.

66.    That several of Defendants' African American employees, including but not limited to Plaintiffs, filed complaints of race discrimination in the Defendants' workplace to management and Human Resources personnel without recourse or response.

67.    That Defendants failed to investigate and/or take seriously Plaintiffs' claims of race discrimination which were brought directly to Defendants' management and Human Resources personnel, in violation of their company policies.

68.    That Defendants failed to investigate the claims of race discrimination alleged in Plaintiffs' Charges of Discrimination which were filed with the EEOC, in violation of their company policies.

69.    That Defendants failed to take prompt and/or remedial action in response to Plaintiff's complaints of race discrimination in their workplace.

70.    That Defendants failed to adhere to company policies and/or handbooks relative to race discrimination complaints and grievances in their workplace.

71.   Defendants manipulated, contorted and changed company policies in order to apply them solely against minority, African American employees; Defendants later destroyed such "policies" and documents that allegedly formed the basis of Defendants' disciplinary action.

72.   During Plaintiff's employment, Defendants never disciplined any Caucasian employee(s) for a violation of their anti-discrimination/EEO policy.

73.   That as a result of Defendants failure to act, investigate and/or otherwise address Plaintiffs' complaints, Plaintiff Donald Gambrell suffered severe emotional distress, worry, fear and anxiety, resulting in intermittent medical leaves pursuant to the Family Medical Leave Act from June 29, 2018 through the end of July 2021 when Plaintiff's medical providers recommended a complete stress leave of absence from Defendants' employ due to the continuing race discrimination, race hostile work environment and retaliation and Defendants' failure to assure Plaintiff's safety in the workplace.

74.   As a direct and proximate result of said acts of Defendants, by and through its agents and employees, Plaintiffs have suffered and will continue to suffer loss of past and future earning capacity, loss of dignity, pain and suffering, and enjoyment of life, extreme mental and emotional distress, severe nervousness, mental anguish, embarrassment and humiliation;

75.    Plaintiffs pray for a judgment of compensatory, liquidated and exemplary damages which are fair and just in favor of the against the Defendants resulting from the race discrimination, along with an award of costs and attorney fees so wrongfully incurred.

**COUNT II**
**HOSTILE WORK ENVIRONMENT BASED ON RACE**
**IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 AND THE ELLIOTT LARSEN CIVIL RIGHTS ACT**

76.    Plaintiffs incorporate the preceding paragraphs by reference as if the same were set forth in their entirety.

77.    The conduct of the Defendants, by and through their management and supervisory personnel, condoned, permitted and failed to address the race discrimination against Plaintiff Donald Gambrell to permeate; resulting in a race hostile work environment in violation of the Michigan Elliott Larsen Civil Rights Act MCLA §37.2101 et. seq.; Title VII of the Civil Rights Act of 1964 as amended by the Civil Rights Act of 1991 and all relevant sections of the Act.

78.    Despite Plaintiff's consistent complaints regarding the race hostile work environment and retaliation, nothing was done by Defendants' management to investigate and/or cease the race hostile work environment or to ensure Plaintiff's safety during his employment.

79.     That several of Defendants' African American employees, including but not limited to Plaintiffs, filed complaints of hostile work environment based on race in the Defendants' workplace to management and Human Resources personnel without recourse or response.

80.     That Defendants failed to investigate and/or take seriously Plaintiffs' claims of race discrimination which were brought directly to Defendants' management and Human Resources personnel, in violation of their company policies, which exacerbated the race hostile work environment at GM/G4S/RCM.

81.     That Defendants, through their counsel, contacted Plaintiff Donald Gambrell to threaten and intimidate him following the issuance of the EEOC Right to Sue Letter by stating, "whatever you do is going to fail," and stating "your EEOC complaints are null and void, you can't use anything" against the company.

82.     Defendants and its agents' actions were intended to further harass, embarrass and humiliate the Plaintiffs in continuance of the race hostile work environment and in retaliation for his complaints against Defendants with their management and the EEOC.

83.     Defendants' management, by and through their actions, permitted, condoned and created a race hostile work environment for Plaintiff and his African American co-workers.

84.     Following employee complaints of race discrimination including but not limited to making racial epithets, using undue force and/or threats of violence against African Americans based on their race in Defendants' workplace, such complaining employees were singled out, micromanaged, written up, demoted, suspended and/or otherwise harassed by Defendants' management.

85.     Defendants' management records, videos, surveils and closely monitors only the minority employees in the workplace.

86.     Defendants' refusal and/or failure to properly and adequately investigate employee complaints of race discrimination, harassment, hostile work environment and discriminatory treatment based on race is a violation of Title VII and ELCRA and created a hostile work environment for Defendants' minority employees, including but not limited to Plaintiffs.

87.     Defendants' refusal and/or failure to take prompt or remedial action to end the race discrimination and/or discipline the employees responsible for the creation of a race hostile work environment and discriminatory treatment based on race is a violation of Title VII and ELCRA.

88.     Defendants' managements' refusal to respond to reports of race discrimination, in addition to their race hostile and retaliatory actions after employee reports of such, was intended to and does have a substantial deterrent effect on employees' reports of racism and failure to promote in Defendants' workplace.

89.     Several of the minority employees that reported race discrimination and harassment in Defendants' workplace incurred severe emotional distress necessitating a stress leave of absences as a result of the ongoing race hostile work environment.

90.     Defendants routinely terminate minority employees in retaliation for filing complaints of race discrimination and harassment; especially those that incurred such severe emotional distress that it necessitated a medical leave from work.

91.     Defendants proffered reason for terminating the employment of several minority employees that filed complaints of race discrimination included "FMLA abuse," alleging the employees took off too much time from work, despite being the first request for such leave from work which was properly supported with medical documentation from the employee's medical providers; this is merely a pretext for discrimination and retaliation.

92.     Upon Plaintiff's request to Defendants' Human Resources Director for intermittent stress leave as a result of the Defendants' race hostile work environment, pursuant to a pre-approved FMLA intermittent leave; the Defendants' Director responded, "FMLA is not a get out of jail free card, you best remember that" in attempt to intimidate Plaintiff.

93.     That Defendants' race hostile work environment substantially harmed and affected Plaintiff; resulting in both economic and non-economic damages, and severe emotional distress which required several intermittent leaves for stress, anxiety, and depression from 2018 to present.

94.     As a direct and proximate result of said acts of Defendants, by and through their agents and employees, Plaintiffs have suffered and will continue to suffer loss of past and future earning capacity, loss of dignity, pain and suffering, and enjoyment of life, extreme mental and emotional distress, severe nervousness, mental anguish, embarrassment and humiliation.

95.     Plaintiffs pray for a judgment of compensatory, liquidated and exemplary damages which are fair and just in favor of the against the Defendants resulting from the creation of race hostile work environment, along with an award of costs and attorney fees so wrongfully incurred.

## COUNT III
## RETALIATION
**IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, THE ELLIOTT LARSEN CIVIL RIGHTS ACT, THE AMERICANS WITH DISABILITIES ACT, AND THE FAMILY MEDICAL LEAVE ACT**

96.     Plaintiffs incorporate the preceding paragraphs by reference as if the same were set forth in their entirety.

97.     The conduct of Defendants, by and through its management and employees have had, and continues to have a policy, pattern and practice of retaliation

against the Plaintiffs because he protested and/or filed internal claims of discrimination in violation of Defendants' company policy as well as Charges of Discrimination with the EEOC against Defendants for continuing acts of unlawful race discrimination, disability discrimination and retaliation, harassment, in violation of Michigan Elliott Larsen Civil Rights Act ("ELCRA") MCLA §37.2701(a); §704(a) of the Title VII of the Civil Rights Act of 1964 and §503(a) of the ADA; and FMLA, 29 USC §2601, et seq; 29 USC §2615(a)(2) and §2615(b).

98.    Defendants discriminated against and retaliated against the Plaintiff, including but not limited to suspension of employment, threatened write-ups, harassment, and threatened termination as a result of his complaints of race and disability discrimination and retaliation to management and the EEOC.

99.    That Plaintiff participated in protected activity by filing charges of discrimination against Defendant with the EEOC based on continuing violations of race and disability discrimination and retaliation in violation of Title VII and the ADA.

100.    Plaintiff was engaged in protected activity at the time he was suspended from employment and threatened with termination by Defendants; namely, Plaintiff had filed charges of discrimination with the EEOC.

101.    Plaintiff availed himself of a protected right under Title VII and the ADA by filing charges of discrimination with the EEOC.

102.   Plaintiff availed himself of a protected right under FMLA by requesting an intermittent stress leave of absence.

103.   Defendants took adverse action against Plaintiff for engaging in such protected concerted activity.

104.   Plaintiff was adversely affected by Defendants' actions following his protected activity.

105.   There was a "close temporal proximity" between the Plaintiff's charges of discrimination with the EEOC and Defendants' retaliatory actions, including but not limited to Plaintiff's suspension and threatened termination from employment, evidencing a causal connection between such events.

106.   That Defendant harassed and retaliated against Plaintiff for opposing discrimination and cooperating in an investigation with the EEOC, in violation of §704(a) of Title VII and §503(a) of the ADA.

107.   That Defendants conspired to retaliate against Plaintiff because he opposed a violation of ELCRA, Title VII and ADA and participated in an investigation, proceeding or hearing under these Acts.

108.   That Defendants harassed and retaliated against Plaintiff for continually opposing race discrimination and retaliation in their workplace by bringing complaints of such to management and the EEOC, in violation of ELCRA, MCLA §37.2701(a); §704(a) of the Title VII of the Civil Rights Act of 1964 and §503(a) of

the ADA and for taking stress leaves of absence pursuant to the FMLA.

109.    Defendants have a pattern and practice of threatening, condoning, and/or retaliating against employees who file charges of discrimination and harassment and/or state they will fight for equal employment opportunity for themselves and/or other similarly situated minority employees.

110.    When witnesses went to management and Human Resources and reported overhearing Caucasian managers, supervisors and employees colluding as to how they could "get rid of the niggers," they were fired by Defendants' management.

111.    Defendants' proffered reasons for subsequently terminating employees who complained of harassment and/or discrimination in the workplace were merely pretextual in nature.

112.    Plaintiff Donald Gambrell was retaliated against by his employer due to his various complaints of race discrimination, harassment, threats of violence from co-workers, other violations of company policies and the resulting race hostile work environment that he filed with Defendant management, HR and the EEOC throughout his employment.

113.    That Defendants took retaliatorily adverse employment action(s) against Plaintiff as a result of his race discrimination complaints.

114.   Defendants' actions had a substantial deterrent effect on Plaintiff's employment and/or promotional opportunities.

115.   Defendants' proffered reasons for their retaliatory actions and treatment of Plaintiff were merely a pretext for discrimination and retaliation.

116.   Defendants' actions were intended to, and did in effect, embarrass and humiliate the Plaintiffs.

117.   Defendants failed to follow its own policies and procedures as it relates to Plaintiffs and other African American employees who contested race discrimination in the workplace while their policies were enforced when it favored Caucasian employees.

118.   Defendants implemented and enforced its policies in a disparate and retaliatory manner.

119.   That Plaintiff, Donald Gambrell, by protesting different and/or disparate treatment based upon race was continuously retaliated against for outspoken protesting of discrimination, threats of violence, and violation of company policies, all of which has been condoned and conducted by Defendants' management personnel without recourse.

120.   Plaintiff Donald Gambrell was retaliated against for asserting his lawful rights as set forth herein; similarly situated employees who did not complain have not been retaliated against.

121.   Such different and retaliatory treatment towards employees who filed complaints with management and/or HR is condoned and fostered by Defendants' management.

122.   Such different and retaliatory treatment towards employees who filed complaints and Charges of Discrimination with the EEOC is and was at all relevant times fostered, condoned and conducted by Defendants' management.

123.   That Defendants' retaliatory acts harmed and affected Plaintiff; resulting in economic and non-economic damages, and severe emotional distress requiring intermittent leaves for stress, anxiety, and depression.

124.   As a direct and proximate result of said retaliatory acts of Defendants, Plaintiffs have suffered and will continue to suffer loss of earning capacity, wage loss, benefits, earning potential, loss of dignity and enjoyment of life, extreme mental, physical and emotional distress, pain and suffering, severe nervousness, embarrassment and humiliation, all past, present and future.

125.   Plaintiffs pray for a judgment of compensatory, liquidated and exemplary damages which are fair and just in favor of the against the Defendants resulting from their retaliation, along with an award of costs and attorney fees so wrongfully incurred.

## COUNT IV
## <u>LOSS OF CONSORTIUM</u>

126.   Plaintiffs incorporate the preceding paragraphs through reference as if the same were set forth in their entirety.

127.   That Plaintiffs were married on June 6, 2009 and remained married for all relevant time periods herein.

128.   Plaintiff Belynda Gambrell, as the lawful spouse of Donald Gambrell, has and continues to sustain the loss of society, love, sexual relations, services, solace, companionship, consortium, support, affection and all other incidents of the marital relationship with respect to her husband who sustained injuries proximately caused by Defendants' acts of discrimination, creation of a hostile work environment, and retaliation as set forth herein.

129.   Plaintiffs suffer from depression, stress and/or anxiety as a result of the discriminatory and retaliatory actions of Defendants and its agents which has significantly impacted and affected the parties' relationship.

130.   Due to the negative impact and injuries that Defendants' discriminatory and retaliatory actions had on the Plaintiffs' marriage, Plaintiffs have to seek marital counseling and/or mental health treatment with a clergy professional in order to address the resulting injuries.

131.    Due to the negative impact and injuries that Defendants' discriminatory and retaliatory actions had on the Plaintiffs' marriage and the emotional distress that resulted, Plaintiff Belynda Gambrell was mentally and emotionally unable to progress or advance her own career as a result.

132.    As a direct and proximate result of said acts of Defendants, including Defendants' agents, management and employees, Plaintiff Belynda Gambrell suffered and continues to suffer a loss of consortium and is entitled to damages, all past, present and future.

133.    Plaintiffs pray for a judgment of compensatory, liquidated and exemplary damages which are fair and just in favor of the against the Defendants resulting from the loss of consortium, along with an award of costs and attorney fees so wrongfully incurred.

WHEREFORE Plaintiffs respectfully request that this Honorable Court enter judgment against Defendants jointly and severally in whatever sum they are deemed entitled, together with costs, interest, and attorney fees.

Respectfully Submitted,

*/s/ Danielle Safran*
Danielle Safran
30300 Northwestern Hwy., Suite 337
Farmington Hills, MI 48334
Dated: August 9, 2021                (248) 705-6400

## IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN

DONALD AND BELYNDA GAMBRELL,

              Plaintiff,

v.

G4S SECURE SOLUTIONS (USA) INC., RENAISSANCE CENTER MANAGEMENT COMPANY, AND GENERAL MOTORS CORPORATION

              Jointly and severally,

              Defendants.

Case No:

HON.

DANIELLE B. SAFRAN (P61965)
THE SIGLER LAW FIRM, PLC.
30300 Northwestern Hwy., Suite 337
Farmington Hills, MI 48334
(248) 705-6400
safranlaw1@gmail.com
*Attorney for Plaintiffs*

---

## **JURY DEMAND**

      NOW COME Plaintiffs, Donald and Belynda Gambrell, by and through their

attorneys, The Sigler Law Firm, PLC., and hereby requests a trial by jury.

              Respectfully Submitted,


              */s/ Danielle Safran*
              Danielle Safran
              30300 Northwestern Hwy., Suite 337
              Farmington Hills, MI 48334
Dated: August 9, 2021        (248) 705-6400