UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DONALD GAMBRELL and MELYNDA
GAMBRELL,

                Plaintiffs,                               Case Number 21-11846

v.                                                        Honorable David M. Lawson

GENERAL MOTORS, LLC f/k/a GENERAL
MOTORS COMPANY, G4S SECURE
SOLUTIONS (USA) INC., and RENAISSANCE
CENTER MANAGEMENT COMPANY,

                Defendants.

_____/

## OPINION AND ORDER DENYING MOTION FOR JUDGMENT ON THE PLEADINGS

The plaintiff filed a complaint alleging statutory causes of action for discrimination and harassment based on race against three entities which he characterized as his joint employers. The defendants, characterizing the claims as violations of a collective bargaining agreement, have filed a motion for judgment on the pleadings, raising preemption, exhaustion, and procedural arguments based on that characterization. The motion is fully briefed, and oral argument will not assist in its disposition. The Court, therefore, will decide the motion on the papers submitted. E.D. Mich. LR 7.1(f)(2). The complaint does not mention any collective bargaining agreement, any union involvement in the dispute, or any federal law addressing the relationship between labor unions and employers; and there is no basis to read the complaint as asserting claims that are related to a collective bargaining agreement in any way. Therefore, the basic premise of the defendants' arguments fails, and the motion to dismiss will be denied.

I.

Because the present motion challenges the sufficiency of the pleadings under Federal Rule of Civil Procedure 12(c), the facts are stated as alleged in the complaint.

Plaintiff Donald Gambrell is employed by the defendants as a security officer at the Renaissance Center in Detroit. Belynda Gambrell is his wife. Mr. Gambrell is an African-American. He was hired by the defendants in March 2017 and remains employed to this day. Gambrell was jointly employed by the three defendant entities, which are General Motors, LLC, the Renaissance Center Management Company, and G4S Secure Solutions (USA) Inc.

Gambrell charges that the defendants discriminated and retaliated against him on the basis of his race by: (1) paying him and other African-American co-workers less than similarly situated white security guards; (2) since October 2017, countenancing without discipline or consequence racially hostile behavior by the Gambrell's white co-workers, which included demeaning and racially derogatory jokes and comments, and frequently calling Gambrell racially offensive terms such as "bitch," "nigger," "bitch ass nigger," "black jackal," and "rusty" (a reference to the plaintiff's complexion); (3) failing and refusing to investigate Gambrell's complaints of the racially offensive conduct by his co-workers; (4) failing and refusing to respond to complaints of race discrimination even after Gambrell and several co-workers filed discrimination complaints with the EEOC; (5) refusing to investigate Gambrell's complaints that white co-workers had falsified use-of-force reports after physically abusing African-American civilian visitors to the Renaissance Center, instead ignoring the complaints of excessive force and false reporting, and rewarding the white offenders with promotions; (6) failing and refusing to investigate Gambrell's complaint that, in October 2020, he was cornered by several white co-workers who ordered him to "touch his toes" and perform lewd and degrading acts, while making references to a slavery-era practice known as "buck breaking," in which white slave masters would sexually violate African-American male slaves in front of other slaves to instill fear and establish dominance; (7) failing and refusing to respond to other complaints that Gambrell submitted to his supervisors and HR

personnel about racially discriminatory conduct such as the routine denial of leave requests from African-American security officers while similar requests by white co-workers were granted, and the passing over of African-American guards for promotions while less qualified white guards, who also had committed serious misconduct, repeatedly were promoted; (8) when Gambrell questioned why the defendants refused to enforce their own anti-discrimination policies and investigative procedures in response to his complaints, the defendants responded by rescinding the policies and destroying associated documentation, including information associated with Gambrell's complaints; (9) when Gambrell filed his EEOC charges, defendants' counsel responded that "whatever you do is going to fail," "your EEOC complaints are null and void," and "you can't use anything" against the defendants; and (10) when Gambrell requested FMLA leave due to emotional distress that he suffered from the above misconduct, defendants' HR Director responded, "FMLA is not a get out of jail free card, you best remember that," in an effort to intimidate the plaintiff for exercising his leave rights.

Finally, the plaintiffs also allege that in response to his numerous complaints of racially discriminatory treatment suffered by Gambrell and minority co-workers, the defendants retaliated by suspending him, threatening to write him up without reason, and threatening to terminate him. The plaintiffs further allege that due to all of the above intolerable circumstances, Gambrell suffered severe emotional distress that required him to take intermittent medical leaves from 2018 through 2021.

The complaint pleads claims of race discrimination in violation of Title VII of the Civil Rights Act of 1964 and the Elliott-Larsen Civil Rights Act (ELCRA) (Count I), hostile work environment racial harassment under the same statutes (Count II), retaliation under Title VII,

ELCRA, and the Family and Medical Leave Act (FMLA) (Count III), and a state-law claim for loss of consortium brought by Gambrell's spouse (Count IV).

After the plaintiffs filed their complaint, the defendants responded in common by filing an answer and a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c).

## II.

Federal Rule of Civil Procedure 12(c) states that "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Judgment on the pleadings is appropriate when the complaint and the answer demonstrate that there are no material facts in dispute and the moving party is "entitled to judgment as a matter of law." *Paskvan v. City of Cleveland Civil Service Commission*, 946 F.2d 1233, 1235 (6th Cir. 1991).

When a pleading challenge is brought under Rule 12(c), the standard for assessing sufficiency of the allegations is the same that governs motions brought under Rule 12(b)(6). *Vickers v. Fairfield Med. Ctr.*, 453 F.3d 757, 761 (6th Cir. 2006). The Court accepts the pleaded facts (but not the unsupported conclusions) as true and determines whether the plaintiff is entitled to legal relief if all the factual allegations in the complaint are taken as true. *Rippy ex rel. Rippy v. Hattaway*, 270 F.3d 416, 419 (6th Cir. 2001) (citing *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993)). The plaintiff must plead "enough factual matter" that, when taken as true, "state[s] a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007). "Plausibility requires showing more than the 'sheer possibility' of relief but less than a 'probab[le]' entitlement to relief." *Fabian v. Fulmer Helmets, Inc.*, 628 F.3d 278, 280 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

When deciding a motion under Rule 12(b)(6), the Court looks only to the pleadings and the documents attached to them. *Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008); Fed. R. Civ. P. 10(c). With their motion, the defendants attached a copy of a collective bargaining agreement (CBA) as an exhibit. In some circumstances, that may be appropriate. If the complaint makes reference to documents that are "integral to the claims," *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 335-36 (6th Cir. 2007), or are matters of public record, *Northville Downs v. Granholm*, 622 F.3d 579, 586 (6th Cir. 2010), the Court may consider them when deciding a motion under Rule 12(c). Even when documents are not mentioned specifically in the complaint, they may be considered if they govern the plaintiff's rights and necessarily are incorporated by reference. *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997), *abrogated on other grounds by Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506 (2002).

But here, the collective bargaining agreement falls into none of those categories. The pleading does not anywhere refer to a CBA, does not allege a violation of any provision of a CBA, and does not plead any count for violation of a CBA or breach of the duty of fair representation by any bargaining unit. The CBA was not attached to or referenced by the pleadings, and, contrary to the defendants' argument, contemplation of it is not "integral to the claims" of racial discrimination and retaliation, nor do its provisions "govern the rights" that allegedly were violated by the defendants' conduct. The agreement also is not a matter of public record. It therefore is not within any category of materials subject to consideration on a pleading challenge and may not be considered at this stage of the case. *Wysocki v. Int'l Bus. Mach. Corp.*, 607 F.3d 1102, 1104 (6th Cir. 2010).

Moreover, the defendants conspicuously do *not* argue — and no information has been presented to suggest — that any provision of the CBA in question makes any of the pleaded state

or federal discrimination and retaliation claims subject to mandatory resolution in a non-judicial forum, e.g., by specifying that all such claims must be submitted to binding arbitration. *C.f. Nealy v. Shelly & Sands, Inc.*, 852 F. App'x 879, 883 (6th Cir. 2021) (analyzing a contract that *did* require statutory discrimination claims to "be submitted to arbitration before suit may be brought in court."). In the absence of any such argument, and as further discussed below, there is no basis for a conclusion that the CBA necessarily "governs" the plaintiff's rights or that the contract properly is before the Court for consideration at this early stage of the case. The exhibit is impertinent and immaterial, and the Court will strike it. Fed. R. Civ. P. 12(f)(1).

A.

Despite the absence of any mention of a CBA in the complaint, the defendants argue that the claims are "governed by" a collective bargaining agreement, and the plaintiff failed to exhaust the grievance procedure under the CBA. As a general rule, the Labor-Management Relations Act (LMRA) authorizes an employee to sue an employer in federal court for a violation of a CBA. 29 U.S.C. § 185(a). However, before pursuing relief in the judicial forum via such a suit under the LMRA, "an aggrieved employee [first] must attempt use of the contract grievance procedure agreed upon by employer and union as the mode of redress." *Miller v. Chrysler Corp.*, 748 F.2d 323, 325 (6th Cir. 1984) (quoting *Republic Steel v. Maddox*, 379 U.S. 650, 652 (1965)) (cleaned up).

As noted above, though, the claims pleaded in the complaint are not premised on any violation of a CBA. The plaintiffs also have not pleaded any cause of action for violation of a CBA by Gambrell's joint employers or failure by his union adequately to represent his interests. The defendants in fact highlight in their motion that no claims have been pleaded under the LMRA against the defendants or any union. In the absence of any such claims, federal courts consistently

have held that the provisions of a CBA, and relatedly the existence of any union grievance procedure, are irrelevant to the proceedings in a federal lawsuit alleging discrimination and retaliation. *DeVooght v. City of Warren*, No. 20-10812, 2020 WL 6708845, at *8 (E.D. Mich. Nov. 16, 2020) (holding that *Clayton v. International Union, UAW*, 451 U.S. 679 (1981), interpreting section 301 of the LRMA, "is expressly limited to § 301 claims, and it does not compel exhaustion of internal union remedies in a case alleging discrimination under state and federal statutes"); *see also Bolin v. Gen. Motors, LLC*, No. 16-13686, 2019 WL 196885, at *5 (E.D. Mich. Jan. 13, 2019) ("In sum, the Court does not read *Clayton* to compel exhaustion of internal union remedies in a case alleging age discrimination under state and federal statutes against a union and other alleged joint employers.").

Similarly, here the rights asserted are defined by state and federal statutory law, not any provision of a CBA, and nothing in the pleading suggests that interpretation of the terms of a bargaining agreement will be essential to resolve the claims. *See Watts v. United Parcel Serv., Inc.*, 701 F.3d 188, 192 (6th Cir. 2012) ("[T]he right to be free from disability discrimination that Watts seeks to vindicate in this action does not arise from the CBA or from state law; rather, it is founded on the ADA. A claim under the ADA is a separate, statutorily created federal cause of action independent from a CBA-based contract claim under the LMRA. Watts may have had a claim under the CBA, which she could have sought to vindicate according to the provisions of the CBA or by bringing a § 301 contract-based action under the LMRA. That contract right does not negate her statutory right."); *id.* at 192-93 ("UPS has not argued that Watts was subject to a mandatory arbitration agreement under the CBA that she failed to exhaust before bringing her ADA claim in federal court. . . . [And she] is not pursuing a contractually based claim under the

CBA, but rather an independent statutory claim under the ADA. Although UPS may rely on the CBA in defense of that claim, Watts's claim itself does not depend on the CBA.").

The defendants do not challenge the *prima facie* pleading of any essential elements of the discrimination or retaliation claims. Instead, in support of their "exhaustion" and "preemption" arguments, they contend that the allegations of the complaint are "intertwined" with charges that the defendants failed to perform certain obligations of investigation and redress specified by the CBA. However, as detailed above, the complaint alleges much more than that. The plaintiff plainly asserts, among other things, that the defendants underpaid him and other African-American security guards versus white co-workers; ignored the plaintiff's complaints of obnoxious racist harassment by white guards; disregarded his complaints that white guards used excessive force against minority civilian visitors and logged false reports to conceal the improper uses of force; passed over minority candidates for promotion while promoting white guards who were the subject of the complaints discussed above; and, finally, in response to the plaintiff's pursuit of grievances and EEOC charges, and his use of FMLA leave to recuperate from emotional distress caused by the alleged misconduct, the defendants' representatives and counsel responded by threatening to terminate and discipline the plaintiff without cause. The defendants' motion simply ignores those plain allegations of racially discriminatory and retaliatory conduct.

B.

The defendants also argue that all the plaintiffs' claims are "preempted" by Section 301 of the LMRA, because they are "inextricably intertwined" with provisions of the CBA, and resolution of the claims will require interpretation of the agreement's terms,

It is well accepted that state law claims based on a violation of a CBA are completely preempted by federal law and must be brought under section 301 of the LRMA. *Caterpillar Inc.*

*v. Williams*, 482 U.S. 386, 394 (1987) (holding that "when the heart of the state-law complaint is a clause in the collective bargaining agreement, that complaint arises under federal law"). The complete preemption contemplated by section 301 "is so powerful as to displace entirely any state cause of action 'for violation of contracts between an employer and a labor organization.'" *Ibid.* (quoting *Franchise Tax Board of Cal. v. Construction Laborers Vacation Trust for Southern Cal.,* 463 U.S. 1 (1983)). "Section 301 governs claims founded directly on rights created by collective-bargaining agreements, and also claims substantially dependent on analysis of a collective-bargaining agreement." *Id.* at 394.

The Sixth Circuit applies two steps to determine whether claims are preempted under section 301. *DeCoe v. Gen. Motors Corp.*, 32 F.3d 212, 216 (6th Cir. 1994) (citing *Terwilliger v. Greyhound Lines, Inc.*, 882 F.2d 1033, 1037 (6th Cir. 1989)). First, the court looks to see if "proof of the state law claim requires interpretation of collective bargaining agreement terms." *Ibid.* Then the court determines "whether the right claimed by the plaintiff is created by the collective bargaining agreement or by state law." *Ibid.* "If the right both is borne of state law and does not invoke contract interpretation, then there is no preemption." *Ibid*.

Neither of these premises is satisfied here. The defendants have not explained how any elements of the discrimination, retaliation, or loss of consortium claims necessarily will turn on the interpretation of any provision of a CBA. Rather, the right to be free of racially invidious discrimination and retaliation for complaining about it are borne of state statutory law (ELCRA) and are not rights created by contract.

As discussed above, the complaint does not allege any violation of duties under a CBA, but it plainly does allege several types of unlawful discriminatory and retaliatory conduct by the defendants. In such cases, the Sixth Circuit and district courts in this circuit routinely have held

that section 301 preemption is inapplicable and does not preclude federal court litigation of discrimination and retaliation claims under Title VII or related federal and state statutes. *See Nealy v. Shelly & Sands, Inc.*, No. 20-1100, 2020 WL 4334890, at *7 (S.D. Ohio July 28, 2020) (finding no preemption where there was no claim against a labor union and none of the state law claims required interpretation of a CBA), *aff'd*, 852 F. App'x 879 (6th Cir. 2021).

The decision in *Adamo Demolition Co. v. International Union of Operating Engineers Local 150*, 439 F. Supp. 3d 933, 944 (E.D. Mich. 2020), *aff'd*, 2021 WL 2764593 (6th Cir. 2021), which the defendants principally cite, readily is distinguishable because (1) the suit was brought by an employer against a labor union, and (2) the complaint pleaded state law claims for tortious interference and defamation that were founded entirely on factual allegations of conduct by the union that did not violate any separate legal duty but allegedly was improper merely because the union's directives violated contractual requirements of a CBA that stipulated certain staffing levels and qualifications for workers assigned to fulfill jobs.

Moreover, there is no basis in the law for the defendants' argument that the LMRA can "preempt" discrimination and retaliation claims under other federal statutes. As the Sixth Circuit has noted, "although courts sometimes use the term 'preemption' in analyzing conflicts between federal statutes, '[t]hat language is imprecise. Preemption involves a conflict between state law and federal law. . . . Therefore, the FLSA could not 'preempt' a civil RICO claim, but it could preclude it.'" *Cayton v. Metro. Govt. of Nashville & Davidson County*, No. 20-00859, 2022 WL 183437, at *5 n.2 (M.D. Tenn. Jan. 19, 2022) (quoting *Torres v. Vitale*, 954 F.3d 866, 872 n.1 (6th Cir. 2020)). The defendants have not cited any authority holding that section 301 preempts any cause of action brought by a union employee under any applicable federal statute for redress of unlawful discrimination and retaliation, and the cases on point hold squarely to the contrary. *Watts*

*v. United Parcel Serv., Inc.*, 701 F.3d 188, 192 (6th Cir. 2012) ("[T]he preemption doctrine is inapposite when applied to federal anti-discrimination claims.") (collecting cases); *see also Jamison v. Dow Chem. Co.*, No. 03-10226, 2005 WL 1252204, at *5 (E.D. Mich. May 23, 2005) ("In fact, the Sixth Circuit regularly considers cases where Title VII is at issue but the parties' relationship is governed by a collective bargaining agreement unhampered by arguments of section 301 preemption. The right to be free of discrimination under both state and federal law is independent of contract rights.") (collecting cases).

C.

Next, the defendants insist that the complaint is "ripe for dismissal" because the plaintiff "failed to allege a claim for violation of the duty of fair representation against his union." However, this is not a "hybrid" suit, that is, one where a plaintiff alleges both a breach of a CBA and a violation of his union's duty of fair representation. *See Saunders v. Ford Motor Co.*, 879 F.3d 742, 750 (6th Cir. 2018). Here, the plaintiffs have alleged neither claim.

And the defendants have cited no legal authority endorsing their novel theory that a complaint is subject to dismissal merely for its failure to plead an alternative cause of action against which a defendant would prefer to defend, rather than the adequately pleaded causes actually asserted. It is axiomatic that "'the plaintiff is the master of the complaint' and free to choose between legal theories," *McNeil v. Cmty. Prob. Servs., LLC*, 945 F.3d 991, 996 (6th Cir. 2019) (quoting *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 398-99 (1987)). There is no rule of law holding that a complaint asserting one validly pleaded cause of action must be dismissed merely because it fails to allege another, entirely separate cause.

D.

Finally, the defendants contend that the claims against General Motors, LLC are barred because Gambrell did not name that entity in his EEOC charge and failed to exhaust administrative remedies by filing a discrimination charge against GM.

The parties agree as a general matter that under Title VII, a plaintiff must exhaust administrative remedies by filing a discrimination complaint with the EEOC before pursuing litigation in federal court. *See Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 361–62 (6th Cir. 2010) (citing 42 U.S.C. § 2000e–5(e)(1)). However, the administrative complaint need only be "'sufficiently precise to identify the parties, and to describe generally the action or practices complained of.'" *Ibid.* (quoting 29 C.F.R. § 1601.12(b)). Courts recognize that "because aggrieved employees — and not attorneys — usually file charges with the EEOC, their *pro se* complaints are construed liberally, so that courts may also consider claims that are reasonably related to or grow out of the factual allegations in the EEOC charge." *Ibid.* (citing *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 732 (6th Cir. 2006)). "As a result, 'whe[n] facts related with respect to the charged claim would prompt the EEOC to investigate a different, uncharged claim, the plaintiff is not precluded from bringing suit on that claim.'" *Ibid.* (quoting *Davis v. Sodexho*, 157 F.3d 460, 463 (6th Cir. 1998)).

In addition, "[f]ailure to exhaust administrative remedies in a timely manner is an affirmative defense, and the defendant bears the burden of pleading and proving this failure." *Lockett v. Potter*, 259 F. App'x 784, 786 (6th Cir. 2008). It is undisputed that the plaintiff did file an EEOC complaint (several, in fact), and subsequently received a right-to-sue letter before filing his complaint in this case. The defendants' sole contention is that the EEOC complaint did not specifically identify General Motors, LLC as Gambrell's employer. However, federal courts

confronting the exhaustion defense in the posture of an early pleading challenge have held that an alleged deficiency in naming the employer in an EEOC complaint is not an appropriate basis for dismissal under Rule 12(b)(6), or, analogously, on a 12(c) motion. *Pfeil v. State St. Bank & Trust Co.*, 671 F.3d 585, 599 (6th Cir. 2012) ("Courts generally cannot grant motions to dismiss on the basis of an affirmative defense unless the plaintiff has anticipated the defense and explicitly addressed it in the pleadings.").

The complaint here contains no affirmatively pleaded grounds for dismissal due to failure to exhaust, particularly where it expressly alleges that the plaintiff filed several EEOC charges against "the defendants" as his "joint employers," and then timely filed suit after receiving corresponding right-to-sue letters. *E.g.*, Compl. ¶ 15 ("Plaintiff Donald Gambrell filed another Charge of Discrimination with the MDCR and EEOC, Charge Number 471-2020-04100, in March 2021 alleging a continuing violation of race discrimination, disability discrimination and retaliation *against Defendants, Plaintiff's joint employers*, in violation of Title VII of the Civil Rights Act of 1964 as amended by the Civil Rights Act of 1991 and all relevant sections of the Act and Americans with Disabilities Act ('ADA').") (emphasis added).

Moreover, the defense that an entity was not adequately named in the EEOC charge must be evaluated in light of several exceptions, including the rule that a misnomer of the employer may be excused where there was a sufficient "identity of interest" between the entity named in the EEOC filing and the defendant later sued in federal court. *Romain v. Kurek*, 836 F.2d 241, 245 (6th Cir. 1987) (holding that "[t]he failure to name a Title VII defendant as a respondent in the EEOC charge will be excused if an 'identity of interest' is found to exist between the named and unnamed parties").

When deciding whether an identity of interest exists, courts in this circuit apply a four-factor analysis that "looks at the relationship between the named and unnamed parties at the time the charge is filed and conciliation efforts occur: (1) whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint; (2) whether, under the circumstances, the interests of a named are so similar as the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings; (3) whether its absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party; [and] (4) whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party." *Id.* at 245-46.

In this case, the specimen of the EEOC charge exhibited in the plaintiffs' response suggests that information may be forthcoming in discovery that could satisfy those criteria sufficient to excuse the misnomer. For example, the EEOC complaint identified the respondent as "Renaissance Center Security," with a business address of "100 Renaissance Center, Suite A-100, Detroit, MI 48243." EEOC Charge dated Mar. 17, 2021, ECF No. 26-6, PageID.441. Gambrell asserts that the moniker "Renaissance Center Security" does not denote any distinct corporate entity; instead, it was used colloquially in the workplace to identify a joint enterprise involving all of the named defendants, which allegedly acted as his joint employers. The plaintiffs also point out that the business address stated is the address of GM's own global headquarters. Moreover, the plaintiffs have submitted records of corporation filings that identify GM as the corporate parent of defendant Renaissance Center Management Company, ECF No. 26-10, PageID.478-80, and in correspondence about the EEOC proceedings one of the plaintiff's supervisors identified himself in his email signature as follows:

> Larry D. Payne
> *General Motors*
> Renaissance Center Security Operations
> G4S Secure Solutions (USA) Inc.
> 248-761-4838 (cell)
> larry.payne@usa.g4s.com
> *larry.payne@gm.com*

Email dated Dec. 17, 2020, ECF No. 26-6, PageID.446 (emphasis added). Those suggestive details suffice at this early stage of the case to defer resolution of the misnomer exception until a fuller record may be marshaled through discovery. As the Sixth Circuit has held, dismissal under Rule 12 on the basis of an alleged misnomer in the EEOC complaint is not appropriate where it is anticipated that discovery may reveal a sufficient identity of interests between the named and unnamed entities by virtue of corporate parentage or other joint involvement in the employment situation. *Lockhart v. Holiday Inn Exp. Southwind*, 531 F. App'x 544, 547-48 (6th Cir. 2013) (concluding that "it was error for the district court to have dismissed Plaintiff's Title VII claims at this stage in the litigation" when there may have been an identity of interest between the defendant and the party named in the EEOC filing); *see also Bolin v. Gen. Motors, LLC*, No. 16-13686, 2017 WL 3675611, at *7 (E.D. Mich. Aug. 25, 2017).

### III.

None of the defendants' arguments support their request for dismissal at this stage of the case.

Accordingly, it is **ORDERED** that the motion for judgment on the pleadings (ECF No. 21) is **DENIED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated: January 27, 2022