# IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICTOF MICHIGAN

DONALD AND BELYNDA GAMBRELL,

    Plaintiffs,

v.

G4S SECURE SOLUTIONS (USA) INC., RENAISSANCE CENTER MANAGEMENT COMPANY, AND GENERAL MOTORS, LLC,

    Jointly and severally,

    Defendants.

Case No.: 2:21-cv-11846-DML-CI

Hon. David M. Lawson
Magistrate Judge Curtis Ivy, Jr.

---

Danielle B. Safran (P61965)
The Sigler Law Firm, PLC
30300 Northwestern Highway
Suite 337
Farmington Hills, MI 48334
Safranlaw1@gmail.com
(248) 705-6400
*Attorneys for Plaintiffs*

Kelly Eisenlohr-Moul (P85808)
Jennifer L. Pope (P82921)
Devin S. Cohen (NY5509708)
Martenson, Hasbrouck & Simon
2573 Apple Valley Road NE
Atlanta, Georgia 30319
(470) 733-6312
keisenlohr-moul@martensonlaw.com
*Attorneys for G4S Defendants*

## THE G4S DEFENDANTS' MOTION TO ENFORCE SETTLEMENT AGREEMENT

The G4S Defendants file this Motion to Enforce Settlement Agreement, respectfully requesting that the Court enter an order: (1) enforcing the parties settlement agreement and dismissing this case with prejudice; and (2) sanctioning Plaintiffs and their counsel for bad faith tactics and awarding the G4S Defendants costs and fees for having to brief this Motion. In support of this Motion, the G4S Defendants rely on the accompanying Brief in Support of Motion and supporting declarations and exhibits.

Consistent with Local Rule 7.1, the G4S Defendants certify that they conferred with Plaintiffs' counsel by phone on July 6, 2022, to discuss the basis for this Motion and sought Plaintiffs concurrence, but concurrence was not reached making this Motion necessary.

Dated July 7, 2022.                Respectfully submitted,

*/s/ Kelly Eisenlohr-Moul*
Kelly Eisenlohr-Moul
MARTENSON HASBROUCK & SIMON LLP
2573 Apple Valley Rd.
Atlanta, GA 30319
(231) 301-1249
Keisenlohr-moul@martensonlaw.com
*Counsel for G4S Defendants*

1

## THE G4S DEFENDANTS' BRIEF IN SUPPORT OF
## MOTION TO ENFORCE SETTLEMENT AGREEMENT

### I.   INTRODUCTION

On June 17, 2022, the parties reached an agreement in principle to resolve this case and there was a written meeting of the minds on all material terms by June 19, 2022. After the terms of the settlement had been negotiated, reduced to writing, and the final agreement had been swiftly signed by the G4S Defendants, Plaintiffs suddenly and without justification attempted to revoke the agreement and refused to meet and confer with the G4S Defendants regarding any newly proposed modifications. Rather than articulate Plaintiffs' reasoning for seeking to revoke the enforceable agreement, Plaintiffs' counsel immediately requested the Court set hearing dates for Plaintiffs' previously withdrawn discovery motions.

Significantly, Plaintiffs' counsel stated on several occasions that there was a meeting of the minds and implored the G4S Defendants to sign the agreement, but only after the dispositive motion deadline passed did Plaintiffs abruptly claim that no agreement had been reached. Given Plaintiffs' refusal to discuss the agreement or how the G4S Defendants may accommodate any changes by Plaintiffs, the G4S Defendants believe Plaintiffs' inexplicable refusal to sign the agreement is evidence of bad faith sanctionable conduct by Plaintiffs and their counsel. Thus, the G4S Defendants respectfully request this Court enter an order enforcing the settlement

agreement, dismissing the case with prejudice, and awarding the G4S Defendants their costs and fees for having to brief this Motion.

## II.   STATEMENT OF FACTS

1. On June 9, 2022, the G4S Defendants provided Plaintiffs with a proposed settlement agreement in anticipation of reaching a resolution at the June 10, 2022, settlement conference. **Exhibit A, Declaration of Kelly Eisenlohr-Moul,** ¶ 3.

2. On June 10, 2022, the parties attended a second settlement conference with Magistrate Judge Ivy where Plaintiffs' counsel indicated she had reviewed the G4S Defendants proposed settlement agreement and the terms appeared generally acceptable. *Id.*, ¶ 4.

3. On Friday, June 17, 2022, after exchanging several offers of settlement, Plaintiffs accepted the G4S Defendants offer and stated in writing "[w]e have a meeting of the minds on the total of the settlement" and the parties exchanged drafts of the settlement agreement over the weekend. **Exhibit B, Declaration of W. Brian Holladay,** ¶ 3.

4. On June 19, 2022, Plaintiffs provided revisions to the agreement and a damages breakdown to be included in the settlement agreement, which the G4S Defendants accepted. *Id.*, ¶ 5.

5. On June 20, 2022, Plaintiffs' counsel inquired as to the status of the signed settlement agreement and asked the G4S Defendants to withdraw their pending

3

motion. Plaintiffs' counsel reiterated that the parties would enter a dismissal three (3) days after payment was received as contemplated by the settlement agreement. Ex. A, ¶ 6.

6. Specifically, Plaintiffs' counsel stated "I haven't received a signed settlement agreement from defendants as of yet. Its almost 7pm and my client is concerned". Additionally, Plaintiffs' counsel indicated her clients' signatures would follow execution by the G4S Defendants. *Id.*, ¶ 7.

7. In response, the G4S Defendants advised they would file a notice of settlement and withdraw the pending motion. Additionally, counsel for the G4S Defendants explained they were awaiting GM's approval and signature and assured Plaintiffs the executed copy would follow the next day, June 21, 2022. *Id.*, ¶ 8.

8. On June 21, 2022, Plaintiffs' counsel inquired again about the signed agreement stating, "[c]onsidering the parties already agreed to language, other than that regarding mutuality of anti-disparagement, there should be no need for this to be prolonged". *Id.*, ¶ 9.

9. By way of background, the parties already agreed to mutual non-disparagement and the G4S Defendants requested Plaintiffs provide a list of G4S and GM employees to be bound by the provision. *Id.*, ¶ 10.

10. Unfortunately, Plaintiffs refused to withdraw their motion set for hearing on June 22, 2022, *unless* the G4S Defendants provided a signed settlement agreement.

4

However, Plaintiffs had not yet provided the employee names for the non-disparagement provision. Thus, G4S inserted the relevant names and obtained signatures on behalf of both G4S and GM before Plaintiffs' artificial deadline of 12 p.m. on June 21, 2022. *Id.*, ¶ 11.

11. On June 21, 2022, the G4S Defendants provided Plaintiffs with the signed agreement, and did not file their motions for summary judgment given the express meeting of the minds, negotiated and agreed upon material terms, and partially executed agreement. *Id.*, ¶ 12.

12. On June 24, 2022, the G4S Defendants had not heard from Plaintiffs and contacted Plaintiffs' counsel by email requesting a fully executed copy. Plaintiffs unexpectedly raised an issue with the liquidated damages amount, and counsel stated a counterproposal would follow. *Id.*, ¶ 13.

13. On June 28, 2022, Plaintiffs' counsel blindsided the G4S Defendants by attempting to revoke acceptance of the entire agreement based on the liquidated damages provision and unidentified "changes to the agreement that significantly altered the nature of the proposed settlement" and stated that it did not "make sense to provide a counter-demand at this juncture". Ex. A, ¶ 14.

14. The G4S Defendants were astounded given the parties' express meeting of the minds, and urgency from Plaintiffs to have the same agreement signed on June 21, 2022. *Id.*, ¶ 15.

15. In an effort to understand the reason for Plaintiffs' sudden attempt at revocation, the G4S Defendants offered to meet and confer the same day and to discuss whether a motion to enforce the settlement would be necessary. However, Plaintiffs' counsel refused to identify the alleged issues in greater detail and stated she did not see "any reason to further delay the litigation in this matter, given the circumstances". The G4S Defendants remain unaware as to what "circumstances" Plaintiffs' counsel references. *Id.*, ¶ 16.

16. On July 1, 2022, G4S Defendants had not heard from Plaintiffs' counsel regarding a time to meet and confer. Thus, the G4S Defendants called and emailed Plaintiffs' counsel several times clarifying that if Plaintiffs had an issue with the liquidated damages provision, the G4S Defendants would be happy to revise the agreement to reflect an amount satisfactory to Plaintiffs. *Id.*, ¶ 17.

17. Importantly, the G4S Defendants took the liberty of inserting the names of the management employees to be bound by the non-disparagement provision only after Plaintiffs failed to provide employee names while simultaneously insisting the G4S Defendants provide a signed agreement by 12 p.m. on June 21, 2022. *Id.*, ¶ 18.

18. As of the date this Motion was filed, the G4S Defendants remain open to Plaintiffs' modifications, but Plaintiffs' counsel insists an agreement was never

6

reached discussion despite a clear acceptance of the agreed upon material terms, and in the words of Plaintiffs' counsel, "a meeting of the minds". *Id.,* ¶ 18

### III.   ARGUMENT & AUTHORITY

#### A. The Written Settlement Agreement Is Enforceable Because There Was A Meeting Of The Minds On All Material Terms.

Enforcement of a settlement agreement is "appropriate where no substantial dispute exists regarding the entry into and [material] terms of an agreement". *RE/MAX Intern., Inc., v. Realty One*, Inc., 271 F.3d 633, 646 (6th Cir. 2001). Since settlement agreements are a type of contract, enforceability is governed by contract law. Michigan law provides that "a contract is formed upon offer and acceptance and a mutual assent or meeting of the minds on all essential terms." *Masco Cabinetry Middlefield, LLC v. Cefla N.A., Inc*., 637 Fed. Appx. 192, 197 (6th Cir. 2015).

In determining mutual assent between the parties courts apply an objective standard, "looking to the express words of the parties and their visible acts, not their subjective states of mind," *Tillman v. Macy's Inc*., 735 F.3d 453, 459 (6th Cir. 2013); *Innotext Inc. v. Petra'Lex USA Inc.,* 694 F.3d 581, 589 (6th Cir. 2012) (courts look to "relevant circumstances surrounding the transaction, including all writings, oral statements, and other conduct by which the parties manifested their intent"). Even where the parties have yet to memorialize the agreement in writing, the agreement is binding as long as the parties have agreed upon the essential terms. *RE/MAX*., 271 F.3d 633, 646 (6th Cir. 2001).

Applying an objective standard, the Court must enforce the settlement agreement because the written and unambiguous correspondence between the parties demonstrates the material terms were negotiated and agreed upon, memorialized in writing, and executed by the G4S Defendants, which far exceeds the standard requiring only a verbal meeting of the minds. In fact, a myriad of actions by Plaintiffs and their counsel show that an agreement was clearly reached on all material and essential terms. For example: (1) Plaintiffs' counsel reviewed the draft agreement and indicated to the Magistrate Judge that the terms appeared acceptable at the June 10, 2022, settlement conference; (2) Plaintiffs' counsel provided revisions to the G4S Defendants' draft agreement, which the G4S Defendants accepted; (3) Plaintiffs' counsel stated expressly and in writing that there was a "meeting of the minds" on the total settlement; (4) Plaintiffs' counsel urged the G4S Defendants to sign the agreement stating for a second time that there was a meeting of the minds on all terms, except as to non-material details to which the G4S Defendants never objected; (5) both parties notified the Court that a settlement had been reached and filed notices to withdraw their pending motions. SOF ¶¶ 2-6.

Thus, all facts and evidence surrounding the settlement of this matter indicate that Plaintiffs unmistakably assented to the material terms. *See Remark, LLC v. Adell Broad. Corp.*, 702 F.3d 280, 283 (6th Cir. 2012) (enforcing a settlement finding emails that conveyed "an objective meeting of the minds on material terms" was

sufficient evidence of mutual assent). Curiously, only after the dispositive motion deadline lapsed, Plaintiffs suddenly sought to revoke the binding agreement. SOF ¶ 11.

To the extent Plaintiffs rely on the amount of liquidated damages for violations of the settlement agreement, the agreement still must be enforced for two reasons. First, the amount of liquidated damages in the event of a breach is not a material term sufficient to impede enforcement of the settlement. Rather, Michigan contract law finds "liquidated-damages provisions [] enforceable if the amount is reasonable with relation to the possible injury suffered and not unconscionable or excessive." *Hemlock Semiconductor Operations, LLC v. SolarWorld Indus. Sachsen GmbH*, 867 F.3d 692, 706 (6th Cir. 2017) (internal quotation marks and citation omitted). Here, the G4S Defendants first draft of the agreement sent to Plaintiffs before the settlement conference contained their standard liquidated damages clause providing $500 per violation or breach of the terms. SOF ¶ 16. However, after negotiating settlement numbers and landing on a mutually acceptable settlement amount, the G4S Defendants proposed an increased liquidated damages amount of $25,000, which was increased consistent with the settlement paid to Plaintiffs and the possible injury suffered if Plaintiffs were to breach the terms of the agreement. *Id*.

Second, even if such minor details were construed as material terms, there is no dispute over the liquidated damages or mutual non-disparagement provisions. Rather, the G4S Defendants have already accepted the liquidated damages amount proposed by Plaintiffs and have repeatedly asked Plaintiffs to identify the employees for purposes of the mutual non-disparagement provision. SOF ¶ 17. Given the absence of any disagreement over the non-material terms, Plaintiffs lack a basis for trying to rescind their unequivocal acceptance. Indeed, "reservations about signing the settlement agreement are just settlor's remorse" and "mere emotional regret" of agreeing to settlement terms is not a basis for rescinding a contract. *Echols v. Williams*, 267 F. Supp. 2d 865, 867 (S.D. Ohio 2003). As the Sixth Circuit explained, "[p]laintiff has had second thoughts about the settlement, but such thoughts are not uncommon to any settlement. And second thoughts are not enough to void [p]laintiff's obligations under the settlement agreement". *Mich. Reg'l Council of Carpenters v. New Century Bancorp., Inc.*, 99 F. App'x 15, 23 (6th Cir. 2004).

Since Plaintiffs have failed to follow through with their end of the bargain and refused to provide an articulable reason for their sudden revocation of the entire agreement, the G4S Defendants were left with no choice but to file this Motion. SOF ¶¶ 16, 18. Accordingly, there is no reason why this Court should not enforce the settlement agreement and exercise its inherent power to sanction Plaintiffs and their counsel for their bad faith conduct.

### B. This Court Should Exercise Its Inherent Power To Sanction Plaintiffs' Based On Their Bad Faith Conduct And Baseless Attempt To Revoke The Settlement Agreement.

Since the objective evidence establishes a meeting of the minds on all material terms, and Plaintiffs have refused to confer with the G4S Defendants to sort out any non-material details, the Court should sanction Plaintiffs and award the G4S Defendants its costs and fees for having to engage in unnecessary motion practice.

Imposition of sanctions under the Court's inherent power is appropriate when "it finds the action in question was taken in bad faith" or is tantamount to bad faith. *First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F. 3d 501, 518 (6th Cir. 2002). Bad faith, in turn, is associated with conduct that is intentional or reckless. *Schafer v. City of Defiance Police Dep't*, 529 F.3d 731, 737 (6th Cir. 2008). Bad faith may be found in situations of fraud, or where a party shows bad faith by delaying or disrupting the litigation. *Murray v. City of Columbus*, 534 Fed. Appx. 479, 484 (6th Cir. 2013). Notably, a court's inherent power to sanction can be directed against both attorneys and parties. *Stalley v. Methodist Healthcare*, 517 F.3d 911, 920 (6th Cir. 2008).

Additionally, the court may sanction a party under Fed. R. Civ. P. 16(f)(1)(B) if that party fails to participate in a settlement conference in good faith. For instance, "if a party dramatically changes its settlement position after agreeing to negotiate, but does not inform the other party, that party failed to participate in the settlement

11

conference in good faith" and sanctions are warranted. *Tuscola Wind III, LLC, v. Almer Charter Twp.*, 2018 WL 1250476 * 10 (E.D. Mich. 2018); citing *Koehn v. Tobias*, 866 F.3d 750, 753 (7th Cir. 2017).

Both Plaintiffs and their counsel have exceeded the standard for bad faith conduct in negotiating and finalizing the settlement agreement. Most critically, the deadline for filing dispositive motions was June 21, 2022. Plaintiffs' counsel insisted that the G4S Defendants provide a signed agreement by June 21, 2022, and represented that her clients would expeditiously follow suit by returning a fully executed copy to the G4S Defendants. SOF ¶¶ 7-8. Despite explicit assurances that there was a "meeting of the minds" and Plaintiffs' counsel imploring the G4S Defendants to provide a signed copy of the settlement agreement, Plaintiffs' abandoned their end of the bargain without warning once the dispositive motion deadline passed. SOF ¶¶ 5-7.

While Plaintiffs received the benefit and security of a signed agreement, the G4S Defendants were deprived of such, only for Plaintiffs to later claim there was no agreement, citing nothing more than buyer's remorse and non-material details over which the G4S Defendants never objected. Subsequently, Plaintiffs' counsel refused to provide an explanation as to why Plaintiffs were seeking to revoke their acceptance besides buyer's remorse. As it stands, the G4S Defendants are left to conclude that Plaintiffs fraudulently agreed to material terms of a settlement

12

agreement to avoid summary judgment of their claims. SOF ¶ 11. Such unethical gamesmanship by Plaintiffs' counsel should not be tolerated or rewarded by this Court. Alternatively, even if Plaintiffs untimely revocation is unrelated to the dispositive motion deadline, sanctions are nonetheless warranted because the G4S Defendants were forced to file this Motion even though the objective evidence plainly demonstrates a meeting of the minds on all material terms.

As a result, G4S Defendants respectfully request this Court sanction Plaintiffs and their counsel for attempting to renege on the agreement without a valid basis, and refusing to discuss any purported concerns related to the settlement agreement to avoid incurring unnecessary fees in filing this Motion. In the alternative and consistent with Fed. R. Civ. P. 16(f)(1)(B), in the event the Court declines to enforce the binding settlement, the G4S Defendants' request costs and fees associated with attending the two settlement conferences that Plaintiffs attended in bad faith. SOF ¶ 2.

## IV. CONCLUSION

Since the inception of this case, Plaintiffs have seized every opportunity to request sanctions against the G4S Defendants for simply defending their position in the litigation. While the G4S Defendants have focused on resolving this case and avoided requesting sanctions against Plaintiffs, their sudden attempt to rescind a finalized settlement agreement only after the dispositive motion deadline passed

without a legally sufficient reason is a step too far. Simply put, the objective evidence shows a "meeting of the minds" on all material terms and the settlement is easily enforceable under well-established principles of Michigan contract law.

The G4S Defendants respectfully request that this Court enforce the settlement agreement and enter an order dismissing this case with prejudice, and impose sanctions on Plaintiffs and their counsel for their deliberate bad faith conduct in reaching a final resolution of this matter.

Dated July 7, 2022.                    Respectfully submitted,

>*/s/ Kelly Eisenlohr-Moul*
>Kelly Eisenlohr-Moul
>MARTENSON HASBROUCK & SIMON LLP
>2573 Apple Valley Rd.
>Atlanta, GA 30319
>(231) 301-1249
>Keisenlohr-moul@martensonlaw.com
>*Counsel for G4S Defendants*

## **CERTIFICATE OF SERVICE**

I certify that on this 7th day of July 2022, I filed this document using this Court's CM/ECF System that will automatically notify all parties or counsel of record.

*/s/ Kelly Eisenlohr-Moul*