UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DONALD GAMBRELL and
BELYNDA GAMBRELL,

             Plaintiffs,

v.

GENERAL MOTORS, LLC, *et al*.,

             Defendants.

_____/

Case No.: 21-11846

David M. Lawson
United States District Judge

Curtis Ivy, Jr.
United States Magistrate Judge

## <u>ORDER ON MOTIONS (ECF Nos. 48, 49, 81, 84, 94, 95)</u>

Plaintiffs Donald Gambrell and Belynda Gambrell ("Plaintiffs") filed this case on August 9, 2021. (ECF No. 1). Plaintiff Donald Gambrell, a Black male, is employed by Defendants as a security officer at the Renaissance Center. (ECF No. 1, PageID.2-3, ¶¶ 2-11). Plaintiff Belynda Gambrell is his wife. (*Id.* at PageID.2, ¶ 6). Mr. Gambrell alleges Defendants discriminated against him based on his race and disability, then retaliated against him for reporting discrimination. (*Id*. at PageID.3-27, ¶¶ 1-125). Mrs. Gambrell alleges loss of consortium, as Mr. Gambrell suffered depression and anxiety due to his problems at work. (*Id*. at PageID.28, ¶¶ 126-33).

There are six motions addressed in this Order. Plaintiffs moved to compel discovery (ECF No. 48) and for sanctions against Defendants (ECF No. 49).

Defendants moved to enforce a settlement agreement (ECF No. 81) and to stay

proceedings while this motion was pending (ECF No. 84).  Defendants later moved

to reinstate motions withdrawn in anticipation of the parties' executing a settlement

agreement (ECF No. 94), and to extend time for dispositive motions (ECF No. 95).

The motions were referred to the undersigned (ECF Nos. 51, 82, 86, 96, 102).

Counsel for Plaintiffs and Defendants appeared for a hearing on their

motions (except Plaintiffs' motion for sanctions) on August 23, 2022, and again on

November 3, 2022.  The motions were taken under advisement.  The motions are

fully briefed and ready for determination.

A.     <u>Plaintiffs' Motion to Compel (ECF No. 48)</u>

Plaintiffs raise two requests in this motion: to disqualify defense counsel,

Ms. Eisenlohr-Moul, and to compel production of documents withheld under

attorney-client privilege.

The motion to disqualify counsel is **DENIED**.  Plaintiffs seek

disqualification based on the assertion that Ms. Eisenlohr-Moul took part in

investigations related to the claims here.  (ECF No. 48, PageID.1175, n. 4,

PageID.1178).  No authority was cited in support of the request.  It is not for the

Court to find legal support for a party's argument.

The motion to compel production of documents is **DENIED**.  Plaintiff

propounded requests for documents related to Defendants' investigations into

Plaintiffs' complaints.  Defendants produced some documents, but also provided a privilege log concerning communications related to investigations and withheld any further production on the grounds of attorney-client privilege.  Plaintiffs argue further production is required because (1) the communications were business advice, not legal advice, and thus not protected, and (2) they waived the privilege, if it exists, by disclosing the outcome of the investigations.[1]

The attorney-client privilege "is the oldest of the privileges for confidential communications known to the common law."  *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981) (citations omitted).  The aim of this privilege is "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice."  *Id.* at 389.  "However, it is not an absolute privilege.  It applies only where necessary to achieve its purpose and protects only those communications necessary to obtain legal advice."  *In re Antitrust Grand Jury*, 805 F.2d 155, 162 (6th Cir. 1986) (citing *Fisher v. United States*, 425 U.S. 391, 403 (1975)).  Communications seeking business advice are not protected.  *Michigan*

---

[1] Plaintiffs suggest that Defendants have acted in bad-faith withholding documents in the privilege log to conceal the fact that no investigations took place.  They cite the deposition of an employee of Defendants as support for the failure to investigate.  (ECF No. 48, PageID.1171).  In response, Defendants explain that the employee testified that *he* did not conduct any investigations into Plaintiff's complaints.  He also testified that he was not responsible for conducting investigations.  Thus, this testimony does not establish that there were no investigations into Plaintiff's complaints.  (ECF No. 60, PageID.1302).

*First Credit Union v. Cumis Ins. Soc., Inc.*, 2006 WL 1851018, at *2 (E.D. Mich. July 5, 2006).

As to the first argument, defense counsel explained that she oversaw responses to inquiries from management and human resources regarding investigations into complaints of race discrimination. She states she provided legal advice on appropriate steps for handling such investigations, not business advice. (ECF No. 60, PageID.1306-07). Plaintiffs have not provided a valid reason to doubt counsel's representations that the advice was legal in nature. As stated in *Carhartt, Inc. v. Innovative Textiles, Inc*., 333 F.R.D. 113 (E.D. Mich. 2019), "'legal and business considerations may frequently be inextricably intertwined." There is no reason to believe, on the arguments presented, that defense counsel was providing business advice when communicating (orally or in writing) to management staff about internal investigations into race discrimination. Indeed, the nature of such investigations involve legal considerations.

The argument that any privilege was waived lacks a basis in fact. This argument is based on Defendants' confidential mediation statement to the mediator in which they purportedly asserted that the investigations into the Plaintiff's complaint were adequate and they took appropriate remedial steps (among other assertions). Based on this statement, Plaintiffs argue that Defendants have waived attorney-client privilege because the investigations and findings are relevant to an

4

affirmative defense Defendants may raise at trial.  It is true that "[l]itigants cannot hide behind the privilege if they are relying on privileged communications to make their case."  *In re Lott*, 424 F.3d 446, 454 (6th Cir. 2005).  But in their response brief, Defendants state that they do not intend to raise the adequacy of the investigations as a defense.  Their defense is that the alleged conduct did not rise to the level of severe or pervasive conduct.  (ECF No. 60, PageID.1309).  To support their representation, they point out that they did not seek discovery bearing on the adequacy of the investigation.  Since they do not intend to raise the defense, listing the defense among others in a mediation statement does not act as a waiver of the privilege here.

B.     Plaintiffs' Motion for Sanctions (ECF No. 49)

Plaintiffs moved for sanctions on May 12, 2022, against Defendants for alleged discovery violations.  (ECF No. 49).  The motion is based in large part on Defendants' alleged failure to fully respond to discovery requests and otherwise stalling discovery.  Among other issues grieved in this motion is Defendants' delays in filing their disclosures of corporate affiliations and financial interest.  Plaintiff's counsel argues the discovery issues and delays prejudiced her clients because counsel was forced to spend additional time seeking discovery responses or, for example, questioning deponents about corporate affiliations rather than focusing on other issues.

Plaintiffs rely on Fed. R. Civ. P. 26(g)(3), 30, and 37, and the Court's inherent power to sanction to justify an award of sanctions. That said, Plaintiff's brief is light on legal support. They describe grievances against Defendants' conduct or inaction and assert that that conduct entitles them to sanctions such as production of documents or an award of costs and fees. Sanctions are not taken lightly. A party requesting sanctions must justify the award. Plaintiffs have not met this burden. For example, Plaintiffs assert entitlement to sanctions for Defendants' counsel instructing a deponent not to produce a document referenced during the deposition. The three-sentence paragraph in support contains no legal support and insufficient factual support to determine bad faith on Defendants' counsel's part.[2] (*See* ECF No. 49, PageID.1211). The Court will address arguments containing some factual support and at least some legal citation.

> 1.   Rules 26, 30, and 37

Plaintiffs argue that Defendants' assertion of privilege against disclosure of documents warrants sanctions under Fed. R. Civ. P. 26(b)(5)(A)(ii). That rule requires a party withholding information or documents because of privilege to describe the nature of the documents in a matter that enables the other parties to assess the claim of privilege. Notably, that rule does not provide for sanctions for

---

[2] Defendants assert that they advised Plaintiffs' counsel that the document had been produced and there was no need for the deponent to re-produce the document during the deposition. (ECF No. 61, PageID.1341).

6

deficient privilege logs.  Plaintiffs argue that Defendants' April 30, 2022, privilege

log is deficient.  Rather than describing the nature of the documents or

communications, Defendants merely stated that the subject of the documents were

"investigation."  (ECF No. 49, PageID.1204).  Plaintiffs did not cite authority in

support of sanctions for a deficient privilege log.  Generally, a party would move

to compel production of documents in the face of an allegedly deficient privilege

log before seeking sanctions.  The request for sanctions for the privilege log is

unjustified and is **DENIED**.

Plaintiffs request sanctions under Fed. R. Civ. P. 26(g)(3), though it is

unclear what conduct they contend entitles them to sanctions under that rule.  Rule

26(g) requires that every disclosure and discovery request or response/objection

must be signed by an attorney of record.  By signing, the attorney certifies that the

disclosure or discovery is complete and correct, or the response or objection is

warranted by law, among other things.  Rule 26(g)(3) provides for sanctions for an

improper certification.  It says that "[i]f a certification violates this rule without

substantial justification, the court, on motion or on its own, must impose an

appropriate sanction on the signer, the party on whose behalf the signer was acting,

or both."

Plaintiffs' citation to Rule 26(g)(3) is in a section of their brief about

Defendants allegedly refusing to allow management-level deponents to produce

documents responsive to Plaintiffs' subpoena *duces tecum*, and without proper objection.  (ECF No. 49, PageID.1206-08).  These facts do not help explain a claim about an improper certification.  No sanctions will be awarded pursuant to Ruel 26(g)(3).

Defendants' alleged refusal to allow management deponents to produce documents also forms the basis for a request for sanctions under Rules 30(d)(2) and 37(c)(1)(A) and (B).  Plaintiffs contend that Defendants did not show the notices to the deponents or ask whether the deponents had those documents.  According to Plaintiffs, the deponents indeed had possession of responsive documents, contrary to Defendants' representation that the documents were in London and not easily accessible.  They also stated that Defendants made only boilerplate objections and, for one deponent, attempted to rely on objections to a prior notice.

Rule 30(d)(2) provides for sanctions against a person who impedes, delays, or frustrates the fair examination of a deponent.  Plaintiffs insist that by not getting documents from the deponents, Defendants impeded, delayed, and frustrated the depositions.  But Plaintiffs' conclusory assertions that without the documents the depositions were impeded or frustrated does not entitle them to sanctions.  Plaintiffs made no showing that they were indeed entitled to production of those documents or that the depositions were fruitless without the documents.

Rule 37(c)(1) states that, if a party fails to provide information or disclose a witness under Fed. R. Civ. P. 26(a) (initial disclosures or expert witness disclosures) or (e) (supplementing initial or expert witness disclosures), that party is not allowed to use that information or witness on a motion or at trial, unless the failure was substantially justified or harmless.  Under this rule, Plaintiffs seek payment of reasonable expenses caused by the failure to provide information or disclose a witness and to inform the jury of the Defendants' failure.  (ECF No. 49, PageID.1208).

Sanctions will not be awarded under Rule 37(c)(1) because the issue with deponents not producing documents bears no connection to the failure to provide initial disclosures or to disclose expert witnesses and their reports.

Plaintiffs also seek sanctions under Rule 37(a)(3)(A) for Defendants delay in filing notices of corporate affiliation.  Eastern District of Michigan Local Rule 83.4 requires corporate parties to file a statement of disclosure of corporate affiliations and financial interest.  Plaintiffs point out that Defendants did not file their statements until prompted to do so by Plaintiffs' counsel in an April 2022 email, six months after the complaint was filed.  (ECF No. 49, PageID.1192-93). Plaintiffs assert that Defendants' delay in filing the disclosures was an act of bad faith because they moved to dismiss the complaint based on their corporate affiliations without having first filed this disclosure.

9

Sanctions under Rule 37(a)(3)(A) are not warranted because that rule does not provide for sanctions for the failure to file or delay in filing corporate disclosures. That rule only provides that a party may move to compel and for appropriate sanctions for the failure to make a Rule 26(a) initial disclosure or expert witness disclosure. Nor have Plaintiffs demonstrated any harm to them by Defendants' six-month delay in filing corporate disclosures. To the extent that they claim prejudice by defending against motions to dismiss without the disclosures, since those motions were decided in Plaintiffs' favor, there is no prejudice.

Without accompanying explanation, Plaintiffs sometimes cite Rule 37(a)(5) in their motion and brief. (ECF No. 49, PageID.1182, 1184, 1192). This rule does not entitle them to sanctions. It provides for the payment of expenses if a motion to compel is granted. The Court has not granted a motion to compel in Plaintiffs' favor.

### 2.    The Court's Inherent Power

The Court's inherent authority to sanction "derives from its equitable power to control the litigants before it and to guarantee the integrity of the court and its proceedings." *Dell, Inc. v. Elles*, 2008 WL 4613978, *2 (6th Cir. 2008) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-50 (1991)). The court has the inherent power to sanction a party when that party exhibits bad faith or conduct that is

10

tantamount to bad faith, including the party's refusal to comply with the court's orders. *Chambers*, 510 U.S. at 43-50. It is within a court's inherent authority to "fashion an appropriate sanction for conduct which abuses the judicial process." *Dell*, at *2 (quoting *Chambers*, 510 U.S. at 44-45).

Plaintiffs describe four instances or circumstances they argue entitle them to sanctions by way of the Court's inherent authority.

Plaintiffs argue that the Court should sanction Defendants for their refusal to provide the indemnity agreement (and related documents) between the Defendants. Plaintiffs offered to enter into a protective order to protect confidential information, but Defendants did not respond to the offer. As a result of Defendants' conduct, Plaintiffs "spent an inordinate amount of time during management depositions trying to ascertain the business affiliations between the Defendant corporate entities which has resulted in excessive and unnecessary costs." (ECF No. 49, PageID.1194). Defendants moved to dismiss the case based on their corporate affiliations but refused to disclose those affiliations, or in Plaintiffs' perspective, Defendants concealed the affiliations. For that reason, Plaintiffs seek sanctions under the Court's inherent power. (*Id.* at PageID.1195). Defendants argue that their relationship or affiliation is immaterial. They insist that information aside from knowledge of the existence of the indemnity agreement

11

is not relevant to the defense or prosecution of this case.  (ECF No. 61, PageID.1332).

Next, they assert that Defendants' disclosure of private settlement communications in a response brief was an attempt to sway the Court and they should thus be sanctioned.  (ECF No. 49, PagedID.1195-96).  Defendants admit restating Plaintiffs' settlement position that Plaintiffs would not negotiate for less than one million dollars, but insist sanctions are not warranted for that remark because it was previously disclosed during a status conference and because this instance does not constitute a consistent, intentional disregard of rules or orders. (ECF No. 61, PageID.1333-34).

Finally, they contend they are entitled to sanctions for Defendants' alleged failure to meet and confer before filing motions to dismiss and motions to stay in violation of the Court's practice guidelines.  And they seek sanctions for Defendants' counsel's misrepresentation of Plaintiffs' educational background. (ECF No. 49, PageID.1199-1200).  Defendants respond that they made good-faith efforts to confer prior to filing each motion, but Plaintiff's counsel avoided their calls and emails.  (ECF No. 61, PageID.1335).

The Court **DENIES** the motion for sanctions.  Neither of the four scenarios described suggest bad faith, or are tantamount to bad faith such that sanctions are warranted.  Plaintiffs declined to move to compel production of the indemnity

agreement, so Defendants' failure to produce is not sanctionable on these facts.

Further, while parties should not disclose confidential settlement discussions, it

appears that the single statement had been made to the Court before it was included

in a response brief.  And that statement did not sway the Court in rulings on

motions, contrary to Plaintiffs' concerns.  It is also noteworthy that Plaintiffs

disclosed an argument Defendants put forth in their confidential mediation

statement in their motion to compel.  As to the meet and confer issue, the parties

have a history of lack of communication, and given the differing accounts of

whether Defendants tried to confer or Plaintiffs' counsel evaded telephone calls to

avoid conference, the Court will not award any sanctions.  Finally, an error in

stating Plaintiffs' educational background, without some showing of prejudice,

does not justify an award of sanctions.

### 3.    Unsupported Request for Sanctions

Without any legal support, Plaintiffs seek sanctions for Defendants'

contention that they have not alleged a failure to promote claim.  According to

Plaintiffs, Defendants took this position to avoid providing documents on payroll,

compensation, or promotional opportunities.  (ECF No. 49, PageID.1197-98).  In

response, Defendants maintain their position that Plaintiffs did not plead this claim

in their complaint, but state that they produced discovery relevant to the issue.

(ECF No. 61, PageID.1334-35).  The Court will not award sanctions for this issue

because Plaintiffs did not support their argument with citation to legal authority. To the extent that this dispute is grounded in a discovery issue, Plaintiffs did not move to compel documents related to a failure to promote claim.[3]

Plaintiffs also seek an order declaring Defendants' boilerplate objections waived.  They cite to this Court's practice guidelines which require specific, individualized objections.  (ECF No. 49, PageID.1200-02).  The guidelines warn that use of boilerplate objections may subject the party to sanctions.  The guidelines later cite courts that decline to consider such objections.  Defendants argue that their objections were proper.  (ECF No. 61, PageID.1337-38).

No sanctions will be awarded.  Rather than arguing why each of the objections (or groups of objections) are sanctionable, Plaintiffs merely listed PageID citations leaving it for the Court to search the objections of sanctionable conduct.  Plaintiffs bear the burden of justifying an award of sanctions, not the Court.[4]

      4.      Deposition of Larry Payne

---

[3] Rule 37(d) allows a party to move for sanctions without first moving to compel if the opposing party "fails to serve its [interrogatory] answers, objections, or written response." Fed. R. Civ. P.  37(d)(1)(A)(ii).  As to Plaintiffs' arguments about Defendants' refusal to produce certain documents for which they did not move to compel before moving for sanctions, the motion to compel is procedurally improper.

[4] The Court also reviewed the first page listed, ECF No. 47-7, PageID.1126.  The objection to request number 10 is not boilerplate.  This calls into question the propriety of Plaintiffs' conclusory assertions that the other objections are boilerplate and sanctionable.

Plaintiffs seek sanctions under Rule 37 and this Court's inherent power for Defendants' failure to cooperate in scheduling Larry Payne's deposition.  Mr. Payne lives in Traverse City.  Defendants said he would not be deposed remotely, that his deposition must occur in person.  During the course of briefing on this motion, and according to Plaintiffs, the parties agreed that Mr. Payne's deposition would go forward during June 2022.  But as of Plaintiffs' reply brief, Defendants refused to allow the deposition to occur after the close of discovery on May 31, 2022.  (ECF No. 64, PageID.1409).

It is unclear whether Plaintiffs have taken Payne's deposition.  Sanctions will not be awarded for Defendants' alleged conduct related  to Payne's deposition, especially considering the record is unclear on where the deposition now stands.[5]

C.     Defendants' Motion to Enforce Judgment and Motion to Stay (ECF No. 81 and 84)

The parties engaged in two settlement conferences, the latest on June 10, 2022, before the undersigned.  After that conference, the parties continued to exchange offers.  On June 17, 2022, Plaintiffs' counsel wrote to Defendants' counsel that they had a meeting of the minds on a settlement agreement.  On June 21, 2022, Defendants provided Plaintiffs with the agreement signed by them and did not file motions for summary judgment due that day in anticipation of

---

[5] The parties may move the Court for an extension of deadlines if necessary to take this deposition.

15

Plaintiffs' signing the agreement and the case settling.  On June 24, 2022, Plaintiffs

raised an issue with the liquidated damages amount.  On June 28, 2022, Plaintiffs'

revoked acceptance of the entire agreement.  (ECF No. 81, PageID.1985-87).  At

the point of revocation, Plaintiffs had not signed the agreement.

Defendants ask this Court to enforce the agreement they signed on June 21,

2022.  (ECF No. 81, PageID.1987, at ¶ 11).  Under Clause 21 of the agreement, the

> "[p]laintiffs may revoke this Agreement within seven (7)
> calendar days after signing the Agreement by delivering
> a written (electronic) notice of revocation to Kelly
> Eisenlohr-Moul. . . .  This Agreement will not become
> effective or enforceable until the eight (8th) calendar day
> after Plaintiffs sign it (the "Effective Date").  If Plaintiffs
> revoke this Agreement within the 7-day revocation
> period described above . . . this Agreement shall be
> considered null and void."

(ECF No. 85-3, PageID.2086, at ¶ 21).  Plaintiffs revoked acceptance of the

agreement on June 28, 2022, before signing it.  (ECF No. 81, PageID.1987, at

¶13).  Even if Plaintiffs signed the proposed agreement, this agreement was not

enforceable until eight days after their signatures.  Since Plaintiffs' revoked

acceptance on June 28, 2022, before signing, the agreement is "null and void."

(ECF No. 85-3, PageID.2086, at ¶ 21).  Thus, Defendants' motion to enforce

settlement agreement (ECF No. 81) is **DENIED**.

Defendants asked the Court to stay proceedings, scheduling order deadlines,

and the hearing scheduled for August 23, 2022, pending a ruling on Defendants'

motion to enforce the settlement agreement.  (ECF No. 84).  Since the undersigned ruled on the motion to the enforce settlement agreement, above, Defendants' motion to stay (ECF No. 84) is **DENIED AS MOOT**.

D.     Defendants' Motion to Reinstate Motions (ECF No. 94)

Defendants withdrew their motions to strike Plaintiff's jury demand, to compel independent medical examinations of Plaintiffs, and for leave to file two summary judgment motions after they believed the parties settled the case in June 2022.  On August 29, 2022, they moved to reinstate those motions if their motion to enforce the settlement agreement is denied.  (ECF No. 94).  Plaintiffs contend Defendants failed to seek adequate concurrence in violation of E.D. Mich. L.R. 7.1(a), so they argue Defendants' motion should be denied.  (ECF No. 99).

E.D. Mich. L.R. 7.1(a) only requires movants to make "reasonable efforts" to obtain concurrence.  E.D. Mich. L.R. 7.1(a)(2)(B).  Defendants detailed their attempts at concurrence by telephone on August 26 and August 29, 2022.  (ECF No. 94, PageID.2322).  According to the emails submitted by both parties, it appears Defendants' counsel tried to reach Plaintiffs' counsel by telephone on August 26 and three times on August 29, 2022, before filing.  (ECF No. 99-1, PageID.2558-60); (ECF No. 104-2, PageID.2592-96).  Defendants made "reasonable efforts" to obtain concurrence in their motion.

Since the Court denied Defendants' motion to the enforce settlement agreement, above, Defendants' motion to reinstate (ECF No. 94) is **GRANTED**. The subject matter of these motions could impact ultimate decisions in this case. These motions must be refiled **within 10 days** of this Order.

E.   Defendants' Motion to Extend Dispositive Motion Deadline (ECF No. 95)

On September 7, 2022, Defendants moved for an extension of the dispositive motion deadline to September 12, 2022. (ECF No. 95). The dispositive motion deadline passed on June 21, 2022. (ECF No. 71). Defendants explain, however, that considering the settlement agreement they believed was soon to be executed, dispositive motion practice was unnecessary on or before June 21, 2022. After the agreement fell through, Defendants moved to extend the deadline.

Plaintiffs oppose the motion. They assert that Defendants' alleged bad faith throughout this litigation and "bait and switch" of the terms of the settlement agreement on June 21, 2022, warrant denial of their motion and their motions for summary judgment filed on September 12, 2022. (ECF No. 101).

Federal Rule of Civil Procedure 6(b)(1)(B)'s excusable neglect standard controls. Rule 6(b)(1)(B) permits the court to extend the time to act, after the time to act has expired, where there is good cause and the party failed to act because of excusable neglect. "Although inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable neglect,' it is clear that

18

'excusable neglect' under Rule 6(b) is a somewhat 'elastic concept' and is not limited strictly to omissions caused by circumstances beyond the control of the movant." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 392 (1993).  To determine whether the failure to file a response within the allotted time constitutes excusable neglect, the Court weighs these factors: (1) the danger of prejudice to the opposing party, (2) the length of the delay and its potential impact on judicial proceedings, (3) the reason for the delay, (4) whether the delay was within the reasonable control of the late-filing party, and (5) whether the late-filing party acted in good faith.  *Nafziger v. McDermott Int'l, Inc*., 467 F.3d 514, 522 (6th Cir. 2006) (citing *Pioneer*, 507 U.S. at 395).  The court should "tak[e] account of all relevant circumstances surrounding the party's omission."

The factors weigh in favor of granting the extension.  Plaintiffs argue they would be prejudiced by an extension because responding to the dispositive motions would prevent them from preparing for trial in January 2023 and that it would further delay their pursuit of discovery from Defendants.  As to the first assertion, the parties may move the Court for an extension of case deadlines.  The second assertion is moot since the Court denied Plaintiffs' motion to compel.  It is true that allowing the dispositive motions filed on September 12, 2022, to go forward may potentially impact further Court deadlines, but the reason for the delay supports granting the motion.  While the parties disagree about the facts surrounding the

19

formation of the purported settlement agreement, the Court accepts Defendants'

representations that they declined to file their dispositive motions on the due date

in anticipation of the execution of a settlement agreement that was close to

complete, as Plaintiffs admit.  And finally, despite Plaintiff's assertions otherwise,

the Court finds no bad faith in Defendants' moving for this extension.  On balance,

the factors weigh in favor of the extension.  The motion is **GRANTED**.

Plaintiffs' responses to the motions for summary judgment are due **within**

**21 days** of this Order.  Defendants' replies, if any, are due within 14 days of

service of the response briefs.

**IT IS SO ORDERED**.

The parties here may object to and seek review of this Order, but are

required to file any objections within 14 days of service as provided for in Federal

Rule of Civil Procedure 72(a) and Local Rule 72.1(d).  A party may not assign as

error any defect in this Order to which timely objection was not made.  Fed. R.

Civ. P. 72(a).  Any objections are required to specify the part of the Order to which

the party objects and state the basis of the objection.  When an objection is filed to

a magistrate judge's ruling on a non-dispositive motion, the ruling remains in

effect unless it is stayed by the magistrate judge or a district judge.  E.D. Mich.

Local Rule 72.2.

Date:  November 28, 2022                     s/Curtis Ivy, Jr.
                                            Curtis Ivy, Jr.
                                            United States Magistrate Judge